In the Matter of the Estate of George A. Glenos,
Deceased.
Institution of George A. Glenos, Appellant, v. A. K.
Mantas, as Executor of the Estate of George A.
Glenos, Deceased, Thomas G. Glenos, et al., Re-
spondent-Appellees.

Gen. No. 49,438.

First District, Fourth Division.
November 13, 1964.

George S. Porikos, of Chicago (Charles V. Falkenberg and Charles V. Falkenberg, Jr., of counsel), for appellant.

George D. Karcazes and Max Chill, of Chicago, for Bessie Alessis and Angeline Nicholaou, appellees.

MR. JUSTICE McCORMICK delivered the opinion of the court.

This appeal was taken by Institution of George A. Glenos from an order of the Probate Court of Cook County. Bessie Alessis and Angeline Nicholaou, hereafter referred to as appellees, filed objections to an item in the first current account of the executor of the estate of George A. Glenos, deceased. In the item of the current account in question, the executor proposed to make distribution of $15,000 of the assets of the estate to "the Trustees of the Institution of George A. Glenos, . . ." The will of George A. Glenos was probated in the Probate Court of Cook County. Article II of that will was as follows:

"I hereby advise my Executor hereinafter named that heretofore, on May 31, 1961, I executed a certain document prepared at my request and under my supervision by my attorney, CONSTANTINE G. DRUGAS, which document is captioned 'Inter Vivos Gift—Creation of a Charitable Institution,' and by virtue of which document

284

I have created what is therein described as the 'Institution of George A. Glinos [sic],' for the purpose of cultivating and furthering the education and enlightenment of deserving and capable young people without financial means who originate from in and about the environs of my place of origin, Nestani, Arcadias, Greece, in a manner and to the extent described in said document. I have provided in said document that I shall donate to said Charitable Institution the sum of FORTY THOUSAND ($40,000.00) DOLLARS, and have to this day sent to the depositary of said institution the sum of TWENTY-FIVE THOUSAND ($25,000.00) DOLLARS. It is my desire to fulfill my promise and committment [sic] under said document completely, and to this end, I hereby give, devise and bequeath the sum of FIFTEEN THOUSAND ($15,000.00) DOLLARS to the said 'Institution of George A. Glinos [sic],' and I hereby direct that said sum of FIFTEEN THOUSAND ($15,000.00) DOLLARS be given to said charitable institution by me created during the course of administration of my estate and as soon as possible after my decease."

In response to a petition the court entered an order giving John E. Tsaoussi, as Consul General for Greece, located at Chicago, Illinois, as a representative of a foreign country, leave to receive share of distributee.

A. K. Mantas, executor of the will, filed his first account which showed that there was available in the estate the sum of $71,551.87, and provided for the distribution to "Trustees of the Institution of George A. Glenos, in accordance with Article II," the sum of $15,000.

Thomas G. Glenos, heir and residuary legatee, filed an objection to the first report, as did Bessie Alessis

and Angeline Nicholaou. Thomas G. Glenos is not appealing from the order of the court.

The objections filed by the appellees, among other things, set out that Article II in the will refers to a charitable inter vivos gift allegedly created by a document dated May 31, 1961, which was never consummated and which had never become effective, so that there are no trustees to which the sum of $15,000 could be distributed.

The executor * filed a reply to the objections of Thomas G. Glenos, and in that reply he stated that a charitable trust was created during the lifetime of George A. Glenos prior to May 31, 1961. A copy of that trust agreement is attached to the reply. It is dated "January 1960," and in the reply it is further alleged that the document dated May 31, 1961 is an amendment of the January 1960 document, which is considered the original trust agreement. The first agreement provided that Glenos wished to donate a part of his estate by a "gift inter vivos final and irrevocable" for charitable purposes and for the benefit of his home town, Nestani, Greece. It was stated that an Institution was thereby created and established under the name of Institution of George A. Glinos [sic]; that the place of administration of the Institution shall be temporarily in Chicago, Illinois; and that after the donor's departure for Greece the place of administration shall be in Greece; that the purposes of the Institution are to afford moral protection and financial assistance to young people without financial means who come from the town of Nestani, so that they can pursue their studies in the Gymnasium and the University of Athens or any other University. It is further provided that there shall be a special committee which shall consist of the priest, the teachers

---

* The executor is taking no appeal from the order of the court.

286

of the elementary schools, and the president of the community of Nestani; and it provides in detail for the method of selection of the students who are to receive the benefits set out therein. It is further provided that "During the life of the Donor, the institution shall be administered in all of its activities by the Donor, who shall represent the institution and act in its behalf before any and all state or other authority and agency, either by himself or by his attorney-in-fact." It is further provided that the donor shall be assisted in the administration by an advisory committee of eight persons who are identified by name or occupation; and it is further provided that in the case of the death of the donor the administration of the Institution shall be taken over by the members of the advisory committee of Chicago, if its administration remains in the United States; otherwise, the advisory committee of Greece shall take over. It is further provided that there shall be an immediate inter vivos gift of $39,000, of which $5,000 shall be immediately deposited in the name of the Institution in a Bank of America or Greece, and that the remaining sum of $34,000 shall be in a loan secured by a mortgage which is owed to the donor by a certain resident of Chicago, and that an American bank shall be authorized to collect the money due on the loan and deposit the same in an account of the Institution. There is further provision for the distribution of the corpus of the gift in case the wishes of the donor become impossible of fulfillment.

There is also in the record a decree of King Paul * which sets out the gift contract and refers to certain laws of Greece, and provides: "1. We approve of the formation of a charitable institution in Nestani,

---

* There is no indication how this decree came into the record or whether it was ever admitted in evidence or considered by the Probate Court.

Mantineias under the name 'Institution of George A. Glinos [sic].'" The decree also states that the Institution mentioned is governed by the provisions of the gift contract dated January 22, 1960, and by certain provisions of the Greek law.

The Consul General of Greece also filed a reply to the objections heretofore filed, stating that he was the legal representative of the "Institution of George A. Glenos," which is "a charitable institution duly organized under the laws of the Kingdom of Greece," and states that the said institution was organized under Royal Decree No. 64 under date of January 22, 1961; that the instrument allegedly executed by George A. Glenos under date of May 31, 1961, and which refers to a former instrument executed on January 22, 1960, was not intended to create a new institution but merely to provide more adequately for its administration; and it is further set out that the objections filed amount to a request for interpretation of the will over which the Probate Court has no jurisdiction; and prays that the objections be overruled and that the executor be permitted to pay over to the Consul General of Greece the sum of $15,000.

There also appears in the record the document dated May 31, 1961, referred to in Article II of the will.* That document sets out that George A. Glenos was not satisfied with the document executed by him on January 22, 1960, and provides that certain provisions shall supersede those set out in the first document. The name "Institution of George A. Glinos [sic]" is retained, and the purpose is to cultivate and further the education of deserving and capable young people without financial means who originate in and

---

* It is not indicated whether this document was offered in evidence or by what means it became a part of the record.

about Nestani, Greece, and to assist them in their further studies. The document further sets out:

> "The Creator hereby gives and grants to the Institution the sum of FORTY THOUSAND AND NO/100 ($40,000.00) DOLLARS, said grant to be held as follows: The sum of THIRTY THOUSAND ($30,000.00) DOLLARS, to be deposited in the name of the Institution in a reputable and stable Bank of America, in the country of Greece; the remaining sum of TEN THOUSAND ($10,000.-00) DOLLARS, to be deposited by the Creator in a bank of his own choosing in the United States of America."

It further provides that during the life of the creator the Institution shall be governed, administered and directed by the creator. An advisory committee is appointed consisting of six persons residing in Chicago, Illinois, and nine persons residing in Greece, and a further provision is that on the death of the creator the administration of the Institution shall be taken over by the members of the advisory committee in Greece, to be assisted by the advisory committee in the United States. The document also provides for the selection of persons to receive the benefits and that in a case where the purposes would be impossible of fulfillment the remaining assets of the Institution should be used for public works and improvements in the Village of Nestani.

On September 5, 1963, the acting judge of the Probate Court of Cook County entered the following order:

> "THIS CAUSE COMING on to be heard upon the First Account of A. K. MANTAS, Executor of the Will of GEORGE A. GLENOS, the Objec-

tions of BESSIE ALESSIS and ANGELINE NICHOLAOU . . . the Objections of THOMAS G. GLENOS, the Reply of the Executor . . . and the Reply of . . . Consul General of Greece as the legal representative of Institution of GEORGE A. GLENOS . . . and this matter having come on for hearing and the Court having heard evidence offered on behalf of the objectors, BESSIE ALESSIS and ANGELINE NICHOLAOU, and the evidence presented by the Executor and the Consul General of Greece and having heard arguments of counsel and now being fully advised in the premises DOTH FIND":

Article II of the will was set out in full. In the order it is then stated:

"That no 'Institution of George A. Glenos' was ever created by the document dated May 31, 1961 referred to under said Article II and that no such Institution of George A. Glenos exists and the legacy therefore fails for want of a legatee and should be distributed as a part of the residuary estate.

"9. That the provisions of Article II of the Last Will of GEORGE A. GLENOS, deceased, are clear and unambiguous in the bequest of the sum of Fifteen Thousand ($15,000.00) Dollars to the Institute of George A. Glenos created by the document of May 31, 1961 and this Court's finding that said bequest fails because of a want of a legatee is not an interpretation or construction of said Will."

The court sustained the objections of the appellees to the proposed distribution of $15,000. From that order the Institution of George A. Glenos took an appeal.

In the record in this court there is no transcript of evidence. It appears from the order of the trial court entered on September 5, 1963, that a full hearing was had before it. In the brief of Institution of George A. Glenos, it is stated that the documents of January 22, 1960, the Decree of King Paul, and the document dated May 31, 1961, were introduced in evidence, and that no oral evidence whatsoever was heard. In the brief of the appellees, it is stated that the court at the hearing heard oral evidence.

■ It is axiomatic that neither the trial court nor this court can operate in a vacuum. There are many cases which lay down the rule that when the record in this court does not include a transcript of the proceedings before the trial court, and when the order entered in the trial court recites, as the order of the Probate Court did in this case, that the court heard evidence offered on behalf of the petitioners, the executor and the Consul General of Greece, it must necessarily be assumed that the trial court had before it sufficient evidence to justify the entry of the order.

In Anthony v. Gilbrath, 396 Ill 125, 71 NE2d 84, the court affirmed the order entered in the trial court and stated that where a party litigant brings a case to a court of review he must preserve a record which shows the alleged errors complained of, and where a transcript of the proceedings is not included in the record the appellant has nothing upon which he can base his assignment of alleged errors.

In In re Estate of Gilbert, 319 Ill App 15, 48 NE 2d 567, it was held in an opinion affirming the judgment of the Circuit Court, that all presumptions are in favor of the action of the trial court with the appellant having the burden of establishing errors in the proceedings of the record. Since a transcript of testimony was not filed it must be assumed that the tes-

timony in the record supported the finding of the trial court. See also In re Estate of Murray v. Appeal of Murray, 310 Ill App 121, 33 NE2d 903; Smith v. Smith, 36 Ill App2d 55, 183 NE2d 559.

In In re Estate of Yoon, 20 Ill App2d 343, 156 NE 2d 217, which was an appeal from an order entered in the Superior Court of Cook County which approved an order entered in the final account of an administrator, we affirmed the judgment of the Superior Court and said:

> "In the record before us the motion for a new trial filed in the Superior Court by Jay Hom King Jee is incorporated. In that motion it is stated that certain evidence was heard in the hearing in the Superior Court and attached thereto are certain exhibits which it is stated were received as evidence in the hearing. However, that motion cannot take the place of a transcript of the testimony heard in the court."

The Yoon case goes further than the case before us in that there is nothing in the record in the instant case to indicate that any of these documents were offered or received in evidence; and even had there been a transcript which showed that the Decree of King Paul had been received in evidence, further evidence would be required with reference to the laws of Greece to prove that that document was, as is asserted in the briefs, equivalent to a corporation charter such as would be issued in the State of Illinois. It would also be incumbent upon the appellees to prove the power and authority conferred upon the foreign corporation by the state of its creation. (Fletcher, Private Corporations § 8348 (perm ed rev 1960).) The laws of Greece are not judicially noticed by the courts of this State and would have to be proved as any other fact is proved; and if the corporation con-

292

ducted affairs in this State, such as the receipt of the bequest, it would be necessary that it comply with the Illinois laws governing foreign corporations which conduct any affairs in this State. Sections 163a66–163a86 (Ill Rev Stats 1963, c 32, §§ 67–87).

The current account of the executor, which we are now considering, provided that the sum of $15,000 should be distributed to "Trustees of Institution of George A. Glenos." The objections filed to this report denied that any trustees had been appointed. In the absence of the transcript of evidence, we must so assume. Lacking that proof, the interest of the Greek Consul as the conduit for the distributive share also falls by the wayside.

■ An objection has also been raised before us that the Probate Court order appealed from involved a construction of a will and that such construction was not within the jurisdiction of that court. It has been held repeatedly that probate courts have jurisdiction to construe a will to determine the rights of legatees thereunder and to determine to whom a fund in the hands of the executor shall be paid if all parties to the controversy are before the court.

■■ Strawn v. Jacksonville Female Academy, 240 Ill 111, 88 NE 460, was a case where a suit was filed in the Circuit Court for the construction of certain clauses of a will. The Circuit Court sustained a demurrer to the bill and dismissed it for want of equity. In the opinion of the Supreme Court it was stated that there was no ambiguity in the will and that the only reason to construe the will was the claim of the residuary legatees, one of whom was one of the executors of the will and a complainant in the bill, that by reason of a certain contract with Illinois College the Jacksonville Female Academy was not entitled to the bequest and devise made to its trustees in the will. The court stated that where only purely

293

legal titles are involved and no other relief is asked, equity will not assume jurisdiction to declare the legal titles. The equitable jurisdiction to construe wills is an incident of the general jurisdiction over trusts. The court said, at page 117:

> "The probate court in which the estate is being administered is by the 116th section of the chapter on administration of estates given power and authority to order and direct the payment of legacies mentioned in the will, and this includes the power to determine the legal right of the trustees of the Jacksonville Female Academy to the $10,000. The executors are not authorized to pay it to the trustees without the order of the probate court, and by section 119 it is provided that a legatee cannot maintain an action against an executor for the payment of a legacy until the probate court shall have ordered it to be paid. Any order made by the probate court, in the exercise of its jurisdiction, as to ordering the payment of legacies may be appealed from by the party aggrieved, but unless so appealed from is valid and binding upon the parties and a protection to the executors. . . ."

The court cited "Page on Wills, sec 807," which held that where a statute gives probate courts authority to direct the payment of legacies, such courts may construe wills insofar as is necessary to direct the payment of legacies.

In Bennett v. Bennett, 168 Ill App 658, the court held that the Probate Court, ". . . possessing as it did, full equitable powers in the administration of the estates of deceased persons, had jurisdiction to adjust the equitable rights of the parties to such fund." See also In re Estate of Mortenson, 248 Ill 520, 94 NE 120.

In Kerner v. Peterson, 368 Ill 59, 12 NE2d 884, the court held that the Probate Court has jurisdiction to administer the estate of deceased persons and therefore, it can construe a will and determine the rights of legatees thereunder, citing Strawn v. Jacksonville Female Academy, supra. Teater v. Salander, 305 Ill 17, 136 NE 873, was also cited, and it was held that the Circuit Court had no jurisdiction in a collateral proceeding to determine what distribution should be made of the property of the deceased since these were matters which were amply provided for by the law relating to the administration of estates.

█ In accordance with the rule laid down in these cases, the court's finding that the bequest fails because of the want of a legatee is not an interpretation or construction of a will outside the jurisdiction of the Probate Court.

In the instant case the court had a right and duty to determine whether the Institution of George A. Glenos referred to in the will had any right to the bequest therein made. There is nothing in the record to show that the Institution of George A. Glenos ever came into existence or that it had the power or capacity to accept such bequest, or that there was anybody who would be entitled to receive any money whatsoever in its behalf. The findings and rulings of the Probate Court must be affirmed.

█ In their brief the appellees point out that appellant's brief is in violation of rule 7 of this court. There is no question that appellant's brief violates that rule. Among other things, the points set out are repetitious; points 4 and 21 are identical. It is pointed out that the appellant has in his brief raised 31 points. A great number of these are merely reprinted in the argument portion of the brief. Rule 7 provides that a point made but not argued may be considered waived. In Soter v. Christoforacos, 53 Ill

295

App2d 133, 202 NE2d 833, we refused to consider points which were set out in the brief but which were not argued, and pointed out that, due to congestion in the courts, it is necessary that rules be more strictly construed. See the cases therein cited.

Had a motion been made by appellees, appellant's brief could properly have been stricken.

The judgment of the Probate Court of Cook County is affirmed.

Affirmed.

ENGLISH, P. J. and DRUCKER, J., concur.